UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN MILLERS MUTUAL
INSURANCE COMPANY,

     Plaintiff,

v.

THE TRAVELERS INDEMNITY
COMPANY OF CONNECTICUT and
EMCASCO INSURANCE COMPANY,

     Defendants.

Case No. 16-11767
Honorable Laurie J. Michelson
Magistrate Judge Mona K. Majzoub

---

**OPINION AND ORDER GRANTING DEFENDANT TRAVELERS' MOTION TO
DISMISS [12] AND GRANTING DEFENDANT EMCASCO'S
MOTION FOR SUMMARY JUDGMENT [13]**

---

This is an insurance dispute related to a state-court personal injury action. Pursuant to an insurance policy, Plaintiff Michigan Millers Insurance Company defended one of the entities involved in that action—Angelo's Wholesale Supplies, Inc. Michigan Millers then sued two other insurers—Defendants The Travelers Indemnity Company of Connecticut and EMCASCO Insurance Company—in state court, seeking declaratory judgment that those insurers were also obligated to contribute to the defense. The case was removed here.

Both Defendants have moved for pre-discovery dismissal. Travelers filed a motion to dismiss, asserting that it had no policy covering the relevant Angelo's entity. (R. 12.) EMCASCO filed a motion for summary judgment, asserting that while it at one time covered the relevant Angelo's entity, the policy had expired by the time of the accident underlying the state-court case. (R. 13.) The motions are fully briefed, and the Court held oral argument on November 28, 2016. Michigan Millers' responses reflect its desire for discovery but do little to

address the legal deficiencies of its claims. So for the reasons discussed, the Court agrees with Defendants that Michigan Millers' claims fail as a matter of law.

## I.

The Court begins with Defendant Travelers Indemnity Company of Connecticut's motion to dismiss. (R. 12.)

## A.

Plaintiff Michigan Millers alleges the following in its complaint. James Kretz suffered an injury on the job in January 2013. (R. 1, PID 11.) Kretz was installing a salt spreader underneath a truck when his co-worker Daniel Genord started the truck and accidentally ran him over. (*Id.*) Kretz and Genord are employees of Angelo's Wholesale Supplies. (R. 1, PID 10–11.) (The Court notes that the complaint appears to use the name "Angelo's" to at times refer to three different entities: Angelo's Wholesale Supplies, Angelo's Supplies, and Carlesimo Investments. The specific names, however, are important, as the main issue in dispute is which specific entity was insured under the relevant policies in this case.) The truck that ran over Kretz was owned or registered to another business, Tecumseh Lawn & Landscaping. (R. 1, PID 10.)

Kretz filed a negligence lawsuit against Tecumseh in Oakland County Circuit Court in August 2014. (*Id.*) He alleged that he is permanently disabled because of the accident, and he sought $6.5 million in damages. (*Id.*) Tecumseh filed a third-party complaint against Genord and Angelo's Wholesale Supplies. (R. 1, PID 10, 34.)

When Michigan Millers initiated this suit, Kretz's case remained pending. (R. 1, PID 9, 11.) But the parties have noted in their briefing that the underlying *Kretz* action was dismissed with prejudice on May 25, 2016, following a settlement. (*See*, *e.g.*, R. 13-2, PID 229–30; R. 31; R. 32.)

Michigan Millers insured an entity named "Angelo's Supplies Inc." through a "Commercial Lines Policy." (R. 1, PID 12.) Under that policy, with certain limitations and exclusions, Michigan Millers agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (*Id.*) Michigan Millers also agreed, "[W]e will have the right and duty to defend the insured against any 'suit' seeking those damages." (*Id.*) The policy also had a provision that, in sum, stated that if the insured had other applicable insurance available, Michigan Millers would contribute equal shares if the other insurance also permitted contribution by equal shares. (R. 1, PID 15.) Furthermore, the policy stated that "[i]f the insured has rights to recover all or part of any payment we have made under [the coverage], those rights are transferred to [Michigan Millers]." (*Id.*) Pursuant to the policy, Michigan Millers has provided a defense to Angelo's Wholesale Supplies in the *Kretz* action. (R. 1, PID 16.)

Travelers had a policy that provided coverage for worker's compensation and employer's liability to an entity named "Carlesimo Investments," which has the same address as Angelo's Wholesale Supplies and has the same owner or resident, Angelo Carlesimo. (R. 1, PID 16–17.) Michigan Millers asserts that Carlesimo is a holding company for Angelo's or that "[a]lternatively," the two are "alter egos of one another and/or are one and the same entity." (R. 1, PID 17.)

Travelers' policy with Carlesimo has several relevant provisions. It obligated Travelers to pay certain "sums that [Carlesimo] legally must pay as damages because of bodily injury to your employees," including damages "[f]or which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee[.]" (*Id.*) The policy also provided, "We have the right and

3

duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance." (R. 1, PID 18.) The policy also stated that Travelers would "not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid." (*Id.*)

Michigan Millers' complaint states that pursuant to the Travelers' policy, "[u]pon information and belief, Travelers has been providing workers' compensation insurance coverage relating to James Kretz." (R. 1, PID 16.) On August 29, 2013, Travelers sent a notice of non-renewal to Carlesimo, stating that Travelers would not renew the policy due to the policy's "poor loss ratio," which stemmed from roughly $65,000 in worker's compensation benefits paid as a result of the January 2013 accident. (R. 1, PID 19.)

Travelers refused to defend Angelo's Wholesale Supplies in the *Kretz* action, contending that entity is not insured under the relevant policy. (R. 1, PID 19.) Travelers also asserted that EMCASCO had issued a workers' compensation insurance policy to "Angelo's Wholesale Supplies" that covered the time of the accident. (*Id.*) Michigan Millers had not obtained a copy of that policy at the time of the complaint, so there are no specific allegations about it. (*Id.*) However, EMCASCO has attached a policy with named insureds Carlesimo Investments and Angelo's Wholesale Supplies to its summary-judgment reply brief, and the Court will address the details of that policy further below.

Michigan Millers' complaint asserts nine causes of action for declaratory relief: (1) contribution from Travelers; (2) reimbursement from Travelers; (3) equitable subrogation against Travelers; (4) contractual subrogation against Travelers; (5) waiver by Travelers; (6) contribution from EMCASCO; (7) reimbursement from EMCASCO; (8) equitable subrogation against EMCASCO; and (9) contractual subrogation against EMCASCO. (R. 1, PID 19–26.)

**B.**

When a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the reasonable inference that the defendant is liable[.]" *Id.* at 678. Although this plausibility threshold is more than a "sheer possibility" that a defendant is liable, it is not a "'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

**C.**

Before reaching the merits of Travelers' motion to dismiss, two threshold issues warrant attention.

**1.**

The first issue concerns the meet and confer requirement under this district's local rules. Before filing a motion in this Court, movants must seek concurrence in the relief requested. E.D. Mich. LR 7.1(a). Consistent with the rule, Travelers' motion states, "[T]here was a conference between the attorneys on May 13, 2016 and June 1, 2016 in which Travelers' counsel explained the nature and legal basis of the relief requested in this Motion but did not obtain concurrence." (R. 12, PID 164.)

Michigan Millers criticizes Travelers because the purported "conferences" on those days were mere emails. (R. 17, PID 325.) For instance, on May 13, Travelers' counsel wrote that Angelo's Wholesale Supplies was not a named insured under the relevant policy, asked whether Michigan Millers would thus voluntarily dismiss the action, and noted that while Travelers had made payments to Kretz, such payments were erroneous and were suspended once Travelers realized he was not an employee of the named insured. (R. 17-3, PID 391.) Also, on June 1, Travelers' counsel indicated that Travelers planned to file a motion to dismiss and requested concurrence. (R. 17-4, PID 393.) Michigan Millers' counsel responded, "[y]ou are requesting that we consent to a motion that you have not provided, so please email the draft motion." (*Id*.) Travelers indicates that it provided a copy of the motion (even though, the Court notes, the rule does not require this). (R. 21, PID 651.) Travelers also points out that its counsel had previously left a voicemail to seek concurrence before sending the May 13th email. (*Id*., PID 651.)

The Court is satisfied that Travelers' attempts to seek concurrence were sufficient under Local Rule 7.1 and rejects Michigan Millers' arguments to the contrary. Michigan Millers was aware of Travelers' legal theory for refusing to defend the *Kretz* action—something clear from even the face of the complaint. (*See* R. 1, PID 19 (alleging that "Travelers contends that Angelo's is not insured under the Travelers policy").) Moreover, given Michigan Millers' response to Travelers' motion, there is little possibility that further conference between the parties would have prompted Michigan Millers to dismiss its case. So the Court will not deny Travelers' motion on the basis of Local Rule 7.1.

**2.**

The second issue is whether the Court should convert Travelers' motion to dismiss into a summary-judgment motion due to matters outside the pleadings that the parties have attached to

6

their briefs. As Federal Rule of Civil Procedure 12(d) provides, "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

In ruling on a motion to dismiss, the court may consider materials that are "public records or are otherwise appropriate for the taking of judicial notice." *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). Consistent with that principle, Travelers has attached to its motion articles of incorporation, (R. 12-4, 12-5), annual reports, (R. 12-6, 12-7), and other records from the Michigan Department of Licensing and Regulatory Affairs, (R. 12-2, 12-3), to show that Carlesimo Investments Inc., the only named insured under the relevant Travelers policy, and Angelo's Wholesale Supplies, Inc., the third-party defendant in the underlying *Kretz* action, are distinct entities. The Court may consider these public records without converting Travelers' motion to dismiss into a summary-judgment motion.

This does not mean, however, that the Court is free to consider the host of documents that Michigan Millers has attached to its response—ones that are not public records and were not referred to in the complaint. First, Michigan Millers attaches the May 13th email discussed above in connection with the meet and confer issue, in which counsel for Travelers indicated that the insurer had erroneously made worker's compensation payments for Kretz before discovering he was not an employee of the insured (Carlesimo). (R. 17, PID 327; R. 17-3.) Second, Michigan Millers also attaches emails in which counsel for Travelers denied Plaintiff's request for a copy of another insurance policy, which insured Angelo's Supplies, Inc. (R. 17, PID 328; R. 17-6; R. 17-7; R. 1, PID 34.) Third, Michigan Millers points to Angelo Supplies Inc.'s website to urge that it shows that Angelo's Supplies and Angelo's Wholesale Supplies are the same entities. (R.

7

17, PID 328; R. 17-8, 17-9.) Fourth, Michigan Millers references a May 11, 2016 email in which someone from EMCASCO (the other Defendant in this case) wrote, "I spoke to my underwriting department who advised that Carlesimo Investments and Angelo's Wholesale Supplies, Inc. are two intertwined businesses owned by the same family. It was our intention to insure both entities." (R. 17, PID 334; R. 17-12.)

Michigan Millers says that these materials are central to its claims and thus may be considered on a motion to dismiss.[1] (R. 17, PID 327–28, 334.) But this reflects a misunderstanding of the standard. Courts "may look outside the four corners of the complaint and consider materials attached to a motion to dismiss *if they are referred to in the complaint and central to the claim*." *Berry v. United States Dep't of Labor*, 832 F.3d 627, 637 (6th Cir. 2016) (emphasis added). The documents here may well be central to Michigan Millers' claims, but none were referred to in the complaint.

Moreover, to the extent Michigan Millers believes it can force the conversion of a motion to dismiss simply by attaching extraneous materials to its response brief, it is mistaken. *See Fed. Ins. Co. v. Bonded Lightning Prot. Sys., Inc.*, No. 07-80767-CIV, 2008 WL 5111260, at *3 (S.D. Fla. Dec. 3, 2008) ("Plaintiff does not provide any support for its fundamental assumption that a non-moving party can convert a motion to dismiss into a motion for summary judgment by including extraneous material in its response."); *see also Ranch Realty, Inc. v. DC Ranch Realty, LLC*, 614 F. Supp. 2d 983, 988 (D. Ariz. 2007) (same).

Thus, for purposes of deciding the merits of Travelers' motion to dismiss, while the Court will consider the public records Travelers attached to its motion, the Court excludes from its consideration the above-mentioned documents Michigan Millers attached to its response.

---

[1] Michigan Millers does not appear to have expressly provided a basis for considering the website materials.

### D.

Moving to the merits, Travelers argues that dismissal is warranted because it did not insure the Angelo's entity that is the party to the underlying *Kretz* action. Specifically, the relevant policy states, "You are insured if you are an employer named in Item I of the Information Page. . . ." (R. 1, PID 79.) Item 1 lists only one insured employer, "Carlesimo Investments." (R. 1, PID 74.) Angelo's Wholesale Supplies is not listed (nor is Angelo's Supplies). This poses a problem for Michigan Millers under basic principles of insurance contract construction, which  inherently prevent courts from rewriting insurance policies to extend coverage to entities that clearly are not named in a policy. *See Citizens Ins. Co. v. Pro-Seal Serv. Grp., Inc.*, 730 N.W.2d 682, 685 (Mich. 2007) (per curiam) ("[A]n insurance contract must be enforced in accordance with its terms. A court must not hold an insurance company liable for a risk that it did not assume. . . . [A] court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. Thus, the terms of a contract must be enforced as written where there is no ambiguity."). Michigan Millers attempts to salvage its claim against Travelers with two theories, neither of which persuades the Court its claim does not fail as a matter of law.

### 1.

To start, Michigan Millers' complaint suggests that Travelers' policy requires Travelers to defend the underlying lawsuit because the insured, Carlesimo, is Angelo's holding company, or alternatively, the two "are alter egos of one another and/or are one and the same entity." (R. 1, PID 17.)

On a motion to dismiss, "the Court is not bound to accept as true 'unwarranted' allegations or factual inferences in the Complaint, such as allegations 'contradicted by public

records and other evidentiary materials of which the Court may take judicial notice.'" *Johnson v. Bank of Am. Corp.*, No. 1:11-CV-1284, 2013 WL 664906, at *5 (W.D. Mich. Feb. 22, 2013) (citations omitted); *see also Mulbarger v. Royal Alliance Assocs., Inc.*, 10 F. App'x 333, 335 (6th Cir. 2001) (per curiam). Here, as discussed, Travelers has attached to its motion public records, including articles of incorporation (R. 12-4, 12-5) and annual reports (R. 12-6, 12-7), showing that at least on paper, Carlesimo Investments Inc. and Angelo's Wholesale Supplies, Inc. are distinct entities.

Travelers argues that Michigan Millers' complaint has insufficient allegations for the Court to treat the two entities as one in the same and force Travelers to defend Angelo's Wholesale Supplies, Inc. even though it is not a named insured in the relevant policy. The Court agrees with Travelers, and Michigan Millers has offered almost no argument on this issue.

The Michigan Court of Appeals has recently articulated a four-step test for courts to decide whether to "disregard the separate existence of an artificial entity"—which is essentially what Michigan Millers asks the Court to do here. *See Green v. Ziegelman*, 873 N.W.2d 794, 807 (Mich. Ct. App. 2015). First, a court must "examine the totality of the evidence surrounding the owner's use of an artificial entity and, in particular, the manner in which the entity was employed in the matter at issue." *Id.* at 807 (citations omitted). Then, "[f]rom this evidence, the trial court must determine whether the evidence establishes that the owner operated the entity as his or her alter ego—that is, as a sham or mere agent or instrumentality of his or her will." *Id.* (citations omitted). Next, "[t]he court then must determine whether the manner of use effected a fraud or wrong on the complainant." *Id.* Finally, "the trial court must determine whether the wrong would cause the complainant to suffer an unjust loss." *Id.*

The complaint has few allegations relevant to any of these factors. The complaint alleges that Angelo's and Carlesimo have the same address, (R. 1, PID 17), and "have the same owner or resident agent, Angelo Carlesimo," (R. 1, PID 17). The complaint also alleges that Travelers has made workers' compensation payments to Kretz under the Carlesimo policy, even though he was an employee of Angelo's Wholesale Supplies, not Carlesimo. (R. 1, PID 19.)

But Michigan Millers' complaint makes no allegations that touch on any of the other factors courts traditionally look to determine whether two entities are alter egos of one another, which include "undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302–03 (6th Cir. 2005); *see also Glenn v. TPI Petroleum, Inc.*, 854 N.W.2d 509, 520 (Mich. Ct. App. 2014) (applying the same factors). The mere fact that two corporate entities share the same address and registered agent is not enough to treat them as alter egos of another.

Nor would it be enough to disregard the separate existence of the two corporations simply because Carlesimo is allegedly Angelo's holding company. "Michigan courts have generally required that a subsidiary must become a mere instrumentality of the parent before its separate corporate existence will be disregarded." *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (Mich. 1995) (internal quotation marks and citations omitted); *see also Partner & Partner II, Inc. v. Ayar Prop. Mgmt., L.L.C.*, No. 298693, 2011 WL 3593996, at *5 (Mich. Ct. App. Aug. 16, 2011) (per curiam) ("A corporation is its own 'person' under the law; a distinct and separate entity from its owners, even where the corporation is held by a single shareholder." (citations omitted)). Showing that a subsidiary is a "mere instrumentality" of its parent requires proof of "(1) control

11

by the parent to such a degree that the subsidiary has become its mere instrumentality; (2) fraud or wrong by the parent through its subsidiary; and (3) unjust loss or injury to the claimant." *Maki v. Copper Range Co.*, 328 N.W.2d 430, 433 (Mich. Ct. App. 1982) (per curiam); *see also Tooling, Mfg. & Techs. Ass'n v. Hartford Fire Ins. Co.*, 693 F.3d 665, 673 (6th Cir. 2012) (holding that a policy that named as the insured a limited liability company's sole member and several related entities—but not the LLC itself—did not cover the LLC because "a plain reading of the Policy does not reveal that the parties mutually intended to cover the [LLC] under the Policy"). Nothing in the complaint supports any of these elements.

Accordingly, the Court finds that the complaint does not give any plausible basis to treat Carlesimo and Angelo's Wholesale Supplies as one in the same.

## 2.

The heart of Michigan Millers' response to Travelers' motion is that even though Angelo's Wholesale Supplies is not a named insured in the policy, the doctrines of waiver or estoppel should preclude Travelers from refusing to defend Angelo's Wholesale Supplies in the underlying *Kretz* action because Travelers made workers compensation payments to Kretz, who (according to the allegations in this case and the state case) was an employee of Angelo's Wholesale Supplies but not of Carlesimo (which, as just discussed, is the named insured).

The doctrines of waiver and estoppel are limited in the insurance context. The Michigan Supreme Court has explained the following:

> The application of waiver and estoppel is limited, and, usually, the doctrines will not be applied to broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy. . . . This is because an insurance company should not be required to pay for a loss for which it has charged no premium. . . . As this Court has explained, applying the doctrine of waiver and estoppel to broaden the coverage of a policy would make a contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the defendant

> under the terms of the policy. In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make.

*Kirschner v. Process Design Associates, Inc.*, 592 N.W.2d 707, 709–10 (Mich. 1999) (internal quotation marks and citations omitted). This rationale applies to Michigan Millers' attempt to expand the Travelers' policy to cover Angelo's Wholesale Supplies.

Courts have applied the doctrines of waiver or estoppel in two narrow categories of insurance cases. One is "in situations in which the insurance company has misrepresented the terms of the policy to the insured or defended the insured without reserving the right to deny coverage[.]" *Id.* at 710. Additionally, "courts have extended coverage beyond the terms of the policy when the inequity to the insurer as a result of the broadened coverage is outweighed by the inequity suffered by the insured." *Id.*

Michigan Millers concedes that "it is not evident whether [the first category] applies . . . , but discovery may shed light." (R. 17, PID 338.) This logic is contrary to the standard governing the determination of a Rule 12(b)(6) motion. Michigan Millers is not entitled to discovery simply to search for ways to defeat a motion to dismiss. Instead, "only a complaint that states a plausible claim for relief survives a motion to dismiss" and thus entitles a plaintiff to "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see also Life For Relief & Dev. v. Charter One Bank, N.A.*, No. 12-CV-13550, 2013 WL 3810255, at *3 (E.D. Mich. July 23, 2013) (explaining that "Plaintiff cannot use discovery to obtain specific facts necessary to craft a plausible complaint, 'even when the information needed to establish a claim . . . is solely within the purview of the defendant or a third party.'" (*quoting New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011))). Here, nothing in the complaint suggests that Travelers misrepresented the terms of the policy to the insured or defended the insured without

reserving the right to deny coverage. So this category is not a basis to apply the doctrines of waiver or estoppel.

As for the second category, Michigan Millers says it "arguably applies because any inequity to Travelers would be outweighed by the inequity to Angelo's if the $65,000 or so in Workers' Compensation Payments are effectively voided, without another source of coverage." (R. 17, PID 339.) But there are no allegations that Travelers is going to void the payments that it has made. Even so, it would make little sense to apply this exception—which focuses on inequity to the insured—to a case where the party seeking to benefit from waiver or estoppel is not even an insured in the underlying insurance contract.

This leads to a more general point. While the Court is unaware of any directly relevant Michigan case-law, persuasive authority from elsewhere suggests that generally only parties to an insurance contract can claim the benefit of waiver or estoppel. *See W. Cas. & Sur. Co. v. Am. Nat. Fire Ins. Co.*, 318 N.W.2d 126, 128 (S.D. 1982) ("Only the parties to the contract of insurance, or their privies, can claim the benefit of a waiver or an estoppel. . . . Western was a stranger to the policy between American and R & S Partnership. It is not a proper party to assert the claim of a waiver or an estoppel. (citation omitted)); 17 Couch on Ins. § 239:104 ("Only the parties to the contract of insurance, or their privies, can claim the benefit of a waiver or an estoppel; a stranger to an insurance contract cannot estop the insurer from denying coverage to its insured."); *but see* 46 C.J.S. Insurance § 1147 (noting the same but adding that "in some jurisdictions, an injured third party may raise a claim that the insurer waived a defense on the part of the insured.").

Michigan Millers rebuts with only one case. Specifically, in *CSX Transp., Inc. v. Benore*, 154 F. Supp. 3d 541, 554 (E.D. Mich. 2015), the court cited a case outside of the insurance

14

context, *Yeiter v. Knights of St. Casimir Aid Soc'y*, 607 N.W.2d 68, 69 (Mich. 2000) (per curiam), for the general proposition that "Michigan courts have recognized . . . payments towards a debt or obligation after the expiration of the statute of limitations as evidence of a waiver of that defense." But in the insurance context, Michigan case-law provides that payments under a policy are insufficient to establish estoppel or waiver. *See Hammermeister v. Riverside Ins. Co.*, 323 N.W.2d 480, 482 (Mich. Ct. App. 1982) (per curiam), *modified*, 347 N.W.2d 696 (Mich. 1984) ("The mere fact that the insurer paid some wage-loss benefits is insufficient by itself for us to hold that, in the event the insured filed suit objecting to the amount of benefits paid, the insurer is precluded from asserting that it owes the insured nothing at all. An insurer might rationally conclude it is better to pay something on a suspect claim than to litigate the matter in the hope of paying nothing at all yet to take the position that it has no liability to the insured, where the insured files suit."); *see also Golumbia v. Prudential Ins. Co.*, 116 F.3d 1480 (6th Cir. 1997) (per curiam) ("The fact that an insurer has paid some benefits to an insured party does not preclude it from later asserting that it owes nothing when the insured party files suit." (quoting *Calhoun v. Auto Club Ins. Ass'n*, 441 N.W.2d 54, 56 (Mich. Ct. App. 1989)).

Accordingly, the Court finds that the complaint does not state a plausible claim for a declaratory judgment that Travelers was obligated to defend the underlying state action. As such, Michigan Millers' claims for subrogation, contribution, reimbursement, and waiver against Travelers fail as a matter of law.

## E.

This leaves one issue concerning Travelers' motion: whether Michigan Millers should be granted leave to amend its complaint. Neither party has addressed this issue in any length in their briefing. But the thrust of Michigan Millers' request is that it wants to amend its complaint to

reference another Travelers insurance policy that was apparently in effect and covering an Angelo's entity at the time of Kretz's accident.

Federal Rule of Civil Procedure 15(a)(2) provides that when, as here, a party is not free to amend its pleadings as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." "The court should freely give leave when justice so requires." *Id.* "A court need not grant leave to amend, however, where amendment would be 'futile.'" *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Id*.

The Court finds that amendment here would be futile. The reason Michigan Millers seeks leave to amend is to reference yet another insurance policy issued by Travelers that does not name as the insured the relevant entity in the underlying action, Angelo's Wholesale Supplies. (*See* R. 17, PID 335 (citing R. 17-7).) The policy instead names Angelo's Supplies, Inc. (R. 17-6, PID 404.) And instead of addressing any of the law surrounding whether the separate corporate existence of these entities should be disregarded, Michigan Millers simply points to a website— which does not even appear to mention Angelo's *Wholesale* Supplies—and asserts that "Angelo's website confirms that Angelo's is one entity that has been in business for over 30 years from two locations." (R. 17, PID 335 (citing R. 17-9).) This conclusory allegation does not convince the Court that amending the complaint to reference this policy would change anything. Any such amended complaint would suffer from the same flaw as this one: it would seek to force Travelers to defend an entity that it has not insured.

16

## II.

The Court turns to EMCASCO's motion for summary judgment. For the reasons discussed, the Court will grant the motion.

## A.

Michigan Millers' complaint has four counts against EMCASCO based on one allegation alone: "Travelers contends that EMCASCO issued workers' compensation insurance to Angelo's during the time of the incident. However, no such policy has been obtained or provided. A complete and accurate copy of any applicable EMCASCO policies are in possession of EMCASCO." (R. 1, PID 19.) The Court questions whether this lone allegation against EMCASCO states a plausible claim for relief. But EMCASCO is not seeking dismissal on this basis. Instead, prior to any formal discovery, it has moved for summary judgment on the ground that none of its relevant insurance policies were in force at the time of the January 2013 Kretz accident.

EMCASCO has put in the record a policy naming as insureds both Carlesimo Investments and Angelo's Wholesale Supplies, Inc., which was effective from October 30, 2010 through October 30, 2011. (R. 23-3, PID 681.) The policy included both worker's compensation insurance and employer's liability insurance. (R. 23-3, PID 701–02.) The employer's liability coverage applied to "bodily injury accident" that "arise[s] out of and in the course of the injured employee's employment" and that "occur[s] during the policy period." (R. 23-3, PID 702.)

Though the policy expired by its plain terms prior to Kretz's January 2013 accident, Michigan Millers believes there is still a hook to force EMCASCO to defend the Kretz action. Specifically, a provision of the Workers' Disability Compensation Act of Michigan requires that all worker's compensation policies contain the following language:

17

> That [the insurer] will file with the bureau of workmen's compensation at Lansing, Michigan, at least 20 days before the taking effect of any termination or cancellation of this contract or policy, a notice giving the date at which it is proposed to terminate or cancel this contract or policy; and that any termination of this policy shall not be effective as far as the employees of the insured employer are concerned until 20 days after notice of proposed termination or cancellation is received by the bureau of workmen's compensation.

Mich. Comp. Laws § 418.621(g). This language was in the relevant EMCASCO policy. (R. 19-2, PID 550.) Despite the policy's October 30, 2011 expiration, EMCASCO did not provide notice of termination for the policy until March 2016 at the earliest. (*See* R. 19-4, PID 556; R. 19-5, PID 558.)

Additionally, one of Michigan Millers' attorneys of record in this case, Michael Duffy, has submitted an affidavit about a "brief[]" June 2016 discussion he had with someone named "Zack" at the Michigan Workers' Compensation Agency. (R. 19-6, PID 561.) According to Duffy, Zack told him that EMCASCO was the insurer of record for Angelo's on January 8, 2013 and that the agency had no record of any termination notice, including the one from March 2016. (*Id.*) Duffy also avers that Zack said "the Judge or Magistrate would find the insurer of record liable, . . . it would be [EMCASCO's] burden to prove they had no policy in effect[,] . . . "that this is the WCA's official position, and . . . that EMC 'knows the rules.'" (R. 19-6, PID 562.)

## B.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine

18

issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

On summary judgment, the Court views the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party, here Michigan Millers. *See Matsushita*, 475 U.S. at 587.

## C.

EMCASCO asserts that the undisputed language of its insurance policy with Angelo's Wholesale Supplies establishes that the policy was not effective by the time of Kretz's injury, meaning it is not obligated to defend the underlying action. (R. 13, PID 219–24.) EMCASCO further argues that while its lack of timely termination notice may affect its liability for worker's compensation coverage to Kretz, it does not affect its duty to defend.[2] (R. 23, PD 664.) The

---

[2] The Court is puzzled by the position taken by EMCASCO and its affiant, Claudia McClure, that even if EMCASCO owes worker's compensation benefits under the policy, it would not owe a duty to defend because the employer's liability portion of the coverage "does not provide coverage to Angelo's when a claim is made against it by a third party." (R. 23-2, PID 675.) The policy's language suggests otherwise. Under the policy, EMCASCO agreed, "We have the right and duty to defend, at our expense, any claim proceeding or suit against you for damages payable by this insurance." (R. 23-3, PID 703.) And the policy described such covered damages as "all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered . . ., incud[ing] damages . . . for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee." (R. 23-3, PID 702–3 (emphasis added).) It appears that such liability to third parties is what is at issue from the underlying Kretz action.

19

Court agrees because it is undisputed that the relevant policy expired before Kretz was injured, and the Court is not convinced that EMCASCO's failure to file a timely termination notice would extend its obligation to defend beyond the policy's agreed term.

For one, the language of the policy, as required by Mich. Comp. Laws § 418.621(g), expressly limits the impact of the insured failing to file a termination notice: "any termination of this policy shall not be effective *as far as the employees of the insured employer are concerned* until 20 days after notice of proposed termination or cancellation is received by the bureau of workmen's compensation." (emphasis added.) The policy says nothing about extending coverage *as far as the insured is concerned*.

The Michigan Supreme Court's interpretation of § 418.621(g) further suggests that the provision serves to extend coverage only to benefit an employee, not another insurer. In *Kenny v. AAA Delivery Serv.*, 216 N.W.2d 760 (Mich. 1974), the court considered the purpose of the provision, though in a different set of circumstances. Specifically, AETNA provided worker's compensation insurance for an employer until the employer decided not to renew the policy and became insured through Allstate on the same day the AETNA policy expired. *Id.* at 761. AETNA promptly filed a termination notice, which the Bureau of Workmen's Compensation received the day after the new policy with Allstate became effective. *Id.* Several days later, an employee was injured on the job. *Id.* Allstate took the position that it had no liability because the injury occurred when AETNA was still the worker's compensation insurer of record with the Bureau. *Id.* The court rejected that argument, explaining that "[t]he purpose of M.C.L.A. s 414.1(f); M.S.A. s 17.195(f) [now M.C.L. § 418.621(g)] was to benefit employees by permitting the employer sufficient time to obtain other [worker's compensation] insurance." *Id.* at 672. The court further stated that the provision's purpose "was not to impose liability upon an insurance

20

company which had originally provided insurance coverage but was not renewed by an employer who, without permitting the original policy to lapse, subsequently purchased insurance from another company." *Id.*

By extension, the Court sees little reason why this provision should allow an insured's subsequent carrier to demand contribution for a defense from a prior carrier whose policy had expired, even if the prior carrier failed to perfect its termination notice. Furthermore, no language in the policy—or authority outside of the policy—suggests that EMCASCO's failure to file a termination notice under the worker's compensation portion of the policy should impact the term of the employer's liability portion of the coverage. Thus, the Court finds no genuine issue of material fact concerning whether EMCASCO's worker's compensation policy requires it to contribute to the defense of Angelo's in the *Kretz* action. The Court concludes that as a matter of law, EMCASCO's policy expired well before Kretz was injured, and its failure to file a termination notice did not extend its duty to defend.

But is summary judgment appropriate at this early stage, prior to formal discovery? Federal Rule of Civil Procedure 56(b) allows a party to file a summary-judgment motion "at any time until 30 days after the close of all discovery." Still, the Court is sensitive to the fact that "[s]ummary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002) (quoting *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996)). However, the "non-movant bears the obligation to inform the district court of its need for discovery . . . If the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment without permitting him to conduct any discovery at all will constitute an abuse of discretion." *Abercrombie*, 280 F.3d at 627. Federal Rule of Civil

21

Procedure 56(d) provides a mechanism for making such a showing: the non-movant may show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." And under that rule, upon such a showing, the court may "defer considering the motion or deny it," "allow time to obtain affidavits or declarations or to take discovery," or "issue any other appropriate order."

Nonetheless, "[a] party invoking [the] protections [of Rule 56(d)] must do so in good faith by affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him . . . to rebut the movant's showing of the absence of a genuine issue of fact." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (all but first alterations in original, citation omitted). To that end, Duffy's affidavit, attached to Michigan Millers' response, does not suffice. For one, much of the affidavit details a conversation with "Zack" from the WCA—inadmissible hearsay that cannot be used to defeat a motion for summary judgment. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (noting that because "evidence submitted in opposition to a motion for summary judgment must be admissible . . . hearsay evidence must be disregarded"); *see also North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).

While Duffy's affidavit also asks for discovery and lists certain proposed discovery requests, neither that nor Michigan Millers' briefing explains how the discovery sought would impact the legal issue that the Court has addressed here: whether EMCASCO's untimely termination notice—a notice that is a creature of Michigan's worker's compensation law and the worker's compensation portion of the policy—would force EMCASCO to cover a defense—pursuant to the employer's liability portion of the policy—for an accident that happened well after the policy expired. Thus, the Court is unconvinced that any discovery could change the

22

outcome and suddenly give rise to EMCASCO having the obligation to provide a defense stemming from an accident that happened outside of the policy's term. *See Bowers v. Ophthalmology Grp. LLP*, 648 F. App'x 573, 580 (6th Cir. 2016) (noting that "[e]ven if there has been no discovery, . . . summary judgment may nonetheless be appropriate where the court deems as too vague the affidavits submitted in support of the motion or if further discovery would not have changed the legal and factual deficiencies" (internal quotation marks and citations omitted)); *see also Short v. Oaks Corr. Facility*, 129 F. App'x 278, 281 (6th Cir. 2005) (interpreting the prior version of Rule 56(d) to mean that "a plaintiff opposing a motion for summary judgment cannot simply argue that it needs more discovery-instead, the plaintiff must file a[n] . . . affidavit or a motion that indicates to the district court 'what material facts it hopes to uncover' by the additional discovery requested.").

Accordingly, the Court finds that there is no genuine issue of material fact: EMCASCO does not owe a duty to defend the underlying *Kretz* action. Thus, the Court will grant EMCASCO's motion for summary judgment.

### III.

For the reasons discussed, Defendant Travelers' motion to dismiss (R. 12) is GRANTED and Defendant EMCASCO's motion for summary judgment (R. 13) is GRANTED.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: December 6, 2016        U.S. DISTRICT JUDGE

23

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 6, 2016.

s/Keisha Jackson<u>          </u>
Case Manager